ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| LESLIE COLLAZO RIVERA<br><br>RECURRIDA<br><br>v.<br><br>**VÍCTOR J. OLIVO AFANADOR CPA, CSP.**<br><br>**PETICIONARIO**<br><br>MARÍA M. CINTRÓN VALLE, DAVID M. NIEVES CINTRÓN, VÍCTOR J. OLIVO AFANADOR, VERÓNICA MORÁN Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR VÍCTOR J. OLIVO AFANADOR Y VERÓNICA MORÁN | TA2026CE00564<br><br><br><br><br><br>consolidado con: | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV03009<br><br>Sobre: Incumplimiento de contrato; Interferencia contractual torticera; abuso de derecho; enriquecimiento injusto; daños y perjuicios |
| LESLIE COLLAZO RIVERA<br><br>RECURRIDO<br><br>v.<br><br>**VÍCTOR J. OLIVO AFANADOR, VERÓNICA MORÁN Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS**<br><br>**PETICIONARIOS**<br><br>MARÍA M. CINTRÓN VALLE; DAVID M. NIEVES CINTRÓN; VÍCTOR J. OLIVO AFANADOR CPA, CSP. | TA2026CE00568 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV03009<br><br>Sobre: Incumplimiento de contrato; Interferencia contractual torticera; abuso de derecho; enriquecimiento injusto; daños y perjuicios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de junio de 2026.

Comparece ante nos, en los recursos consolidados de epígrafe, la corporación Víctor J. Olivo Afanador CPA, CSP (en adelante, "VOA, CSP" o "peticionario") y, separadamente, los señores Víctor J. Olivo Afanador, Verónica Morán y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, conjuntamente, "SLG Olivo-Morán" o "peticionarios"), mediante dos recursos de *Certiorari* presentados el 7 de mayo de 2026 y nos solicitan que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI" o "foro primario"), el 19 de marzo de 2026, notificada ese mismo día, mediante la cual el foro primario declaró No Ha Lugar sus respectivas solicitudes de sentencia sumaria, así como la *Orden* emitida el 7 de abril de 2026 que denegó las correspondientes mociones de reconsideración.

Por los fundamentos que exponemos a continuación, expedimos los autos de *certiorari* solicitados y revocamos la *Resolución* recurrida.

**I**

El 30 de mayo de 2023, la señora Leslie Collazo Rivera (en adelante, "señora Collazo Rivera" o "recurrida") presentó una *Demanda*[1] sobre incumplimiento de contrato, interferencia contractual torticera, abuso del derecho, enriquecimiento injusto y daños y perjuicios contra María M. Cintrón Valle (en adelante, "señora Cintrón Valle"), David M. Nieves Cintrón en adelante, "señor Nieves Cintrón")[2] y la SLG Olivo-Morán. Alegó, en síntesis, que el 30 de mayo de 2017 suscribió un contrato de arrendamiento con la señora Cintrón Valle y el señor Nieves Cintrón respecto a un inmueble ubicado en Bayamón que incluía un derecho de primera opción de compra. Indicó que el término de duración del contrato era hasta el 30 de mayo de 2022, pero que por acuerdo entre las partes el mismo quedó extendido

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.
[2] Aunque en la *Demanda* inicialmente se incluyó como parte codemandada al señor Jesús M. Oyola, posteriormente se enmendó para corregir el nombre del codemandado a David M. Nieves Cintrón, hijo de la señora Cintrón Valle. Véase Entrada Núm. 5 del SUMAC del TPI.

mientras se tasaba la propiedad y se negociaba la venta. Añadió que, a pesar de lo anterior, los demandados infringieron dicho acuerdo al vender la propiedad sin ofrecerle previamente la oportunidad de adquirirla. Reclamó, además, que la compraventa —realizada el 24 de mayo de 2023, luego de vencido el término del contrato— fue producto de actuaciones torticeras e ilegales que le ocasionaron daños económicos y emocionales, solicitando la nulidad de la escritura de compraventa, la adjudicación del inmueble a su favor y compensación por alegadas mejoras, ganancias frustradas y sufrimientos y angustias mentales.

Posteriormente se presentó una *Tercera Demanda Enmendada*[3] mediante la cual se incluyó como codemandado a VOA, CSP, por ser esta la entidad que adquirió el inmueble por compraventa.

Tras varios incidentes procesales, el 17 de julio de 2025 se presentó la *Cuarta Demanda Enmendada*[4], la cual constituye la alegación vigente en el pleito. En esta, la recurrida alegó, entre otras cosas, que el señor Olivo incurrió personalmente en actos que alegadamente hicieron sentir a la señora Collazo Rivera hostigada y amenazada; que su esposa participó en los eventos relacionados con la adquisición del inmueble; y que VOA, CSP fue utilizada para perfeccionar la compraventa objeto de controversia y beneficiarse injustamente de las inversiones y operaciones comerciales de la señora Collazo Rivera. La recurrida alegó, además, que el señor Olivo, al momento de comprar la propiedad, conocía que la señora Collazo Rivera tenía un acuerdo de primera opción con los codemandados Cintrón Valle y Nieves Cintrón, e intervino en ese contrato de forma culposa.

El 29 de julio de 2025, la SLG Olivo-Morán presentó su *Contestación a Cuarta Demanda Enmendada*[5] en la que negaron responsabilidad personal y sostuvieron, en síntesis, que el inmueble fue adquirido por la corporación

---

[3] Entrada Núm. 25 del SUMAC del TPI.
[4] Entrada Núm. 180 del SUMAC del TPI.
[5] Entrada Núm. 184 del SUMAC del TPI.

VOA, CSP y no por el señor Olivo en su carácter personal; que la señora Morán no incurrió en conducta culposa alguna; y que no existía base jurídica para extender responsabilidad a la Sociedad Legal de Gananciales.

Por su parte, la señora Cintrón Valle y el señor Nieves Cintrón, en sus respectivas contestaciones alegaron que el contrato de arrendamiento había vencido en julio de 2022; negaron la existencia de un acuerdo sobre la venta de la propiedad a la recurrida; y que varias de las partidas reclamadas constituían bienes adheridos al inmueble conforme a las disposiciones contractuales.[6]

Asimismo, el 18 de agosto de 2025, VOA, CSP presentó su *Contestación de Cuarta Demanda Enmendada y Reconvención Enmendada*[7]. En esencia, negó responsabilidad y sostuvo que adquirió el inmueble válidamente mediante escritura pública e inscripción registral, libre de cargas y sin derecho inscrito alguno a favor de la recurrida. Además, alegó que el contrato de arrendamiento y el alegado derecho de primera opción habían expirado antes de la compraventa. Mediante reconvención, reclamó cánones razonables por la ocupación continuada del inmueble y daños alegadamente ocasionados a la propiedad.

Así las cosas, el 26 de febrero de 2026, la SLG Olivo-Morán presentó una *Solicitud de Sentencia Sumaria*[8]. En esencia, argumentaron que la demanda no contenía alegaciones concretas de conducta culposa o impropia atribuible personalmente a la señora Morán; que el señor Olivo actuó únicamente en representación de VOA, CSP; y reiteraron que era improcedente extender responsabilidad a la Sociedad Legal de Gananciales toda vez que no se habían alegado hechos específicos que demostrasen actuaciones personales atribuibles al matrimonio ni beneficio ganancial directo. Por ello, solicitaron la desestimación con perjuicio de las

---

[6] Véanse Entradas Núm. 187 y 191 del SUMAC del TPI.
[7] Entrada Núm. 189 del SUMAC del TPI.
[8] Entrada Núm. 219 del SUMAC del TPI.

reclamaciones contra la SLG Olivo-Morán, así como la reclamación por daños emocionales al alegar ausencia de prueba pericial o evidencia objetiva que las sustentara.

Ese mismo día, VOA, CSP presentó su propia *Solicitud de Sentencia Sumaria Parcial*[9]. Alegó que el 28 de marzo de 2023 suscribió un contrato de opción de compraventa y que posteriormente, el 24 de mayo de 2023, adquirió el inmueble como tercero registral de buena fe mediante escritura pública debidamente inscrita; que el alegado derecho invocado por la recurrida no estaba inscrito en el Registro de la Propiedad; y que el contrato de arrendamiento había expirado antes de la compraventa. También sostuvo que no se configuraban los elementos de interferencia contractual torticera ni las restantes causas de acción levantadas en su contra.

La señora Collazo Rivera se opuso a las solicitudes de sentencia sumaria presentadas por los peticionarios.[10] En sus escritos, sostuvo que el arrendamiento y el alegado acuerdo de primera opción permanecieron vigentes por acuerdo entre las partes mientras se negociaba la eventual compraventa del inmueble; que VOA, CSP y el señor Olivo conocían de dicho acuerdo; y que las actuaciones imputadas constituían abuso del derecho, enriquecimiento injusto e interferencia contractual torticera.

El 19 de marzo de 2026, el foro primario emitió una *Resolución*[11] declarando No Ha Lugar las solicitudes de sentencia sumaria presentadas por la SLG Olivo-Morán y VOA, CSP. En lo pertinente, en su determinación el TPI hizo las siguientes determinaciones de hechos no controvertidos:

[…]

2. El 30 de mayo de 2017 la parte demandante, como arrendataria, suscribió contrato de arrendamiento con los codemandados, María M. Cintrón Valle y/o David Manuel Nieves Cintrón, como arrendadores, para el local sito en el bloque

---

[9] Entrada Núm. 220 del SUMAC del TPI.
[10] Entradas Núm. 225 y 226 del SUMAC del TPI.
[11] Entrada Núm. 239 del SUMAC del TPI.

cincuenta y uno (51) número 30 en la Avenida Main en Bayamón, Puerto Rico.

3. En lo que concierne a este caso, la cláusula número 3 del antes referido contrato provee lo siguiente:

> "El plazo o duración del presente contrato será de cinco (5) años a partir del décimo día (10mo.) de julio de 2017 hasta el 10 de julio de 2022. La Arrendadora reconoce haber recibido de la Arrendataria las rentas correspondientes del primer mes de renta por adelantado que es [el] 10 de julio de 2017 y un depósito como fianza. El arrendador le otorgará a Arrendatario derecho de primera opción a compra durante el termino de este contrato".

La cláusula seis (6) lee:

> "Que de la Arrendataria efectuar mejoras que se adhieran a la propiedad, estas permanecerán como propiedad de la Arrendadora cuando la Arrendataria abandone la misma. La arrendataria podrá en ocasión llevarse las mejoras muebles no adheridas a la propiedad. NO se podrán efectuar mejoras al inmueble sin autorización y permiso escrito de la arrendadora".

> [...]

4. Según estudio de título efectuado el 27 de abril de 2023 de la finca número 8863 inscrita al folio 234 del tomo 192 de Bayamón Sur, sección 1, Registro de Bayamón no surge que el contrato de arrendamiento suscrito el 30 de mayo de 2017 estuviera inscrito.

5. El 28 de marzo de 2023 se suscribió contrato de Opción de Compraventa entre María Cintrón Valle como "vendedora" y Víctor J. Olivo Afanador, CPA, CSP representada por su presidente, Víctor Olivo Afanador como "comprador" del bien inmueble radicado en la Urbanización Santa Rosa, situada en el barrio Juan Sánchez de Bayamón, que se describe en el plano de inscripción de la urbanización con el #30 de la manzana 51, con una cabida de 346.50 metros cuadrados... donde enclava una casa de una planta de concreto reforzado y bloques de concreto, designada para una familia, que consiste de sala-comedor, tres cuartos dormitorios, cuarto de baño, cocina y balcón y consta inscrita el folio 234, del tomo 192 de Bayamón Sur, sección I, Registro de Bayamón, finca número 8863".

6. EL 24 de mayo de 2023 se otorgó la escritura número uno (1) sobre compraventa ante el notario Oscar González Badillo, donde María Manuel Cintrón Valle le vende a Víctor J. Olivo Afanador CPA, CSP representada por su presidente, Víctor José Olivo Afanador la propiedad en la Urbanización Santa Rosa, situada en el barrio Juan Sánchez de Bayamón, que se describe en el plano de inscripción de la urbanización con el #30 de la manzana 51, con una cabida de 346.50 metros cuadrados.

7. El 2 de junio de 2023, la Escritura Número Uno (1) de Compraventa fue presentada para su inscripción en el Registro

de la Propiedad de Puerto Rico, Sección I de Bayamón, correspondiente a la Finca Núm. 8863.

8. Luego de la compraventa del 24 de mayo de 2023, la parte demandante permaneció ocupando el inmueble.

9. VOA, CSP presentó acción de desahucio en precario contra Leslie Collazo Rivera bajo el caso BY2023CV03145.

10. En el caso BY2023CV03145, el tribunal dictó Sentencia declarando Ha Lugar el desahucio y ordenando la entrega del inmueble a favor de VOA, CSP.

11. La Sentencia dictada en el caso BY2023CV03145 fue objeto de recurso apelativo ante el Tribunal de Apelaciones.

[...]

15. La propiedad alquilada por la parte demandante fue utilizada como salón de belleza.

16. VJOA y VM están casados entre sí bajo el régimen de sociedad de gananciales.

Luego de exponer el derecho, el foro primario concluyó que subsistían controversias reales sustanciales sobre hechos esenciales y pertinentes que deben ser dirimidos y adjudicados en sus méritos en un juicio en su fondo. En particular, el TPI dispuso que debía:

"[P]asar juicio sobre los alegados actos personales del señor Olivo en cuanto a dirimir si hubo o no trato irrespetuoso, mal intencionados, amenazantes; si estos le causaron daños y angustias mentales a la demandante. Además, de las alegaciones en contra del señor Olivo sobre abuso de derecho y enriquecimiento injusto que son imputables de forma personal. Lo mismo ocurre en cuanto a las alegaciones contra la señora Morán y si la SLG responde de forma subsidiaria por el beneficio de la compra en su patrimonio ganancial.

Se tiene que escuchar prueba y dirimir credibilidad para determinar si hubo o no buena fe de VJOA o VOA, CSP al adquirir el bien inmueble y de la cual este se ampara para señalar que es un tercero registral. Todo lo anterior, se suma a los aspectos de responsabilidad civil extracontractual, interferencia torticera, abuso del derecho y enriquecimiento injusto alegados."

Inconforme, el 6 de abril de 2026, la SLG Olivo-Morán presentó una *Moción de Reconsideración*[12]. Argumentaron nuevamente que las actuaciones atribuidas al señor Olivo ocurrieron exclusivamente en el ámbito corporativo de VOA, CSP; que no existía conducta torticera atribuible a la señora Morán

---

[12] Entrada Núm. 242 del SUMAC del TPI.

ni a la Sociedad Legal de Gananciales; que no existía nexo causal entre la conducta del señor Olivo y los alegados daños reclamados y que de existir eran atribuibles a la corporación y no a este en su carácter personal; y que la recurrida no tenía evidencia para sostener la cuantía reclamada en concepto de angustias mentales y sufrimientos emocionales.

De igual forma, VOA, CSP también presentó una *Moción de Reconsideración*[13] reiterando que el alegado derecho invocado por la recurrida constituía, en el mejor de los casos, un derecho de tanteo no inscrito e inoponible a terceros registrales y que la señora Collazo Rivera no contaba con prueba sustancial para derrotar la presunción de buena fe registral.

El 7 de abril de 2026, el TPI declaró No Ha Lugar ambas solicitudes de reconsideración.[14]

Aun insatisfechos, el 7 de mayo de 2026, VOA, CSP presentó el recurso de *Certiorari* de epígrafe, identificado con el alfanumérico TA2026CE00564, solicitando la revisión de la Resolución emitida el 19 de marzo de 2026 y de la orden que declaró No Ha Lugar su reconsideración. En su recurso, el peticionario plantea que el TPI cometió los siguientes errores:

**PRIMER ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE SENTENCIA SUMARIA PRESENTADA POR VOA, CSP, A PESAR DE QUE, CULMINADO EL DESCUBRIMIENTO DE PRUEBA, LA PARTE DEMANDANTE NO PRODUJO NI ANUNCIÓ PRUEBA SUSTANCIAL ADMISIBLE PARA DERROTAR LAS PRESUNCIONES LEGALES QUE AMPARAN A VOA, CSP COMO TERCERO REGISTRAL DE BUENA FE.

**SEGUNDO ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO RECONOCER A VOA, CSP COMO TERCERO REGISTRAL PROTEGIDO POR LA FE PÚBLICA REGISTRAL CONFORME AL ARTÍCULO 35 DE LA LEY 210-2015, CUANDO LOS HECHOS NO CONTROVERTIDOS DEMUESTRAN QUE EL ALEGADO DERECHO DE LA PARTE DEMANDANTE ERA INSCRIBIBLE Y NO FUE INSCRITO, RESULTANDO INOPONIBLE A VOA, CSP COMO ADQUIRENTE DE BUENA FE.

---

[13] Entrada Núm. 243 del SUMAC del TPI.

[14] Entrada Núm. 244 del SUMAC del TPI.

**TERCER ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR SUMARIAMENTE LA CAUSA DE ACCIÓN POR INTERFERENCIA CONTRACTUAL TORTICERA INSTADA CONTRA VOA, CSP, CUANDO COMO CUESTIÓN DE DERECHO NO SE CONFIGURAN SUS ELEMENTOS ESENCIALES.

**CUARTO ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DISPONER QUE, AUN ASUMIENDO LA VIGENCIA DEL CONTRATO INVOCADO POR LA PARTE DEMANDANTE, EL ALEGADO DERECHO ERA DE TANTEO Y NO DE OPCIÓN, LO QUE EXCLUYE COMO CUESTIÓN DE DERECHO LA RESPONSABILIDAD DE VOA, CSP COMO COMPRADOR DE UN INMUEBLE LIBRE DE CARGAS REGISTRALES.

**QUINTO ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR SUMARIAMENTE LA CAUSA DE ACCIÓN POR DAÑOS EMOCIONALES INSTADA CONTRA VOA, CSP, CUANDO LOS HECHOS NO CONTROVERTIDOS DEMUESTRAN QUE LA ADQUISICIÓN DEL INMUEBLE FUE ACTO LÍCITO Y, COMO CUESTIÓN DE DERECHO, NO PUEDE EXISTIR NEXO CAUSAL ENTRE UN ACTO LÍCITO Y LOS DAÑOS RECLAMADOS.

A su vez, la SLG Olivo-Morán presentó un recurso de *Certiorari*, identificado con el alfanumérico TA2026CE00568, en el que plantean los siguientes señalamientos de error:

**PRIMER ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO APLICAR AL SR. VÍCTOR J. OLIVO AFANADOR LA DOCTRINA DE PERSONALIDAD JURÍDICA CORPORATIVA SEPARADA, CUANDO TODOS LOS ACTOS QUE SE LE IMPUTAN FUERON REALIZADOS EN SU CAPACIDAD DE PRESIDENTE Y REPRESENTANTE AUTORIZADO DE VOA, CSP, CORPORACIÓN ADQUIRENTE Y DUEÑA DEL INMUEBLE.

**SEGUNDO ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR SUMARIAMENTE LAS RECLAMACIONES CONTRA LA SRA. VERÓNICA MORÁN, CUANDO LA ÚNICA CONDUCTA QUE SE LE ATRIBUYE NO CONFIGURA ACTO CULPOSO BAJO EL ARTÍCULO 1536 DEL CÓDIGO CIVIL.

**TERCER ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA EN CUANTO A LA SOCIEDAD LEGAL DE GANANCIALES, CUANDO LOS ACTOS IMPUTADOS AL SR. OLIVO NO COMPROMETEN DIRECTAMENTE A DICHA SOCIEDAD.

**CUARTO ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL MANTENER LAS RECLAMACIONES POR LOS ALEGADOS ACTOS DEL 13 DE SEPTIEMBRE DE 2024 CONTRA LOS PETICIONARIOS, EN CONTRADICCIÓN CON SUS PROPIAS DETERMINACIONES DE HECHOS NO CONTROVERTIDOS.

**QUINTO ERROR:**

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA, CUANDO LOS ACTOS IMPUTADOS AL SR. OLIVO NO CONSTITUYEN CONDUCTA CULPOSA O NEGLIGENTE QUE PUEDA SERVIR DE CAUSA ADECUADA DE LOS DAÑOS RECLAMADOS.

Mediante *Resolución* emitida el 11 de mayo de 2026, ordenamos la consolidación de ambos recursos y concedimos un término a la recurrida para expresarse sobre los méritos de los recursos.

A tales efectos, el 28 de mayo de 2026, la señora Collazo Rivera presentó un *Memorando conjunto en oposición a que se expidan los autos de certiorari*, en el que argumentó, en síntesis, que no procedía expedir los recursos ya que no estaban presentes las circunstancias provistas por la Regla 52.1 de Procedimiento Civil y la Regla 40 del Reglamento de este Tribunal de Apelaciones.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

**II**

**A. *Certiorari***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus

méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 209; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo*, supra, pág. 372, citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank v. Zaf Corp. et al.*, 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40

del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari.* En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

### B. Sentencia Sumaria

Como sabemos, la sentencia sumaria es un mecanismo procesal provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, cuyo fin es proveer una solución justa, rápida y económica de los litigios. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). A tenor, dicho mecanismo

procesal permite que un tribunal, disponga parcial o totalmente de litigios civiles en aquellos casos en los que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020).

La sentencia sumaria procede cuando "no existen controversias reales y sustanciales en cuanto a los hechos materiales, por lo que lo único que queda por parte del poder judicial es aplicar el Derecho". *Meléndez González et al. v. M. Cuebas, supra,* citando a *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. JF Montalvo,* 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010).

Al interpretar la precitada Regla el Tribunal Supremo ha expresado que debe dictarse sentencia sumariamente cuando el tribunal sentenciador tiene ante sí, de manera incontrovertible, la verdad sobre todos los hechos esenciales. *ELA v. Cole,* 164 DPR 608, 625 (2005). De manera que, "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria […] cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se entiende que un hecho material es aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Por lo que, no se deberá dictar sentencia sumaria cuando: 1) existen hechos materiales controvertidos; 2) hay alegaciones afirmativas en la demanda que no han sido refutadas; 3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o 4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra et al., supra,* pág. 757; *SLG Szendrey-Ramos v. Consejo Titulares,* 184 DPR 133, 167 (2011).

Al atender la moción de sentencia sumaria, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *ELA v. Cole, supra,* pág.

626. No obstante, "la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática". *Mun. de Añasco v. ASES*, 188 DPR 307, 327 (2013), citando a *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 556 (2011). A su vez, corresponde al juzgador actuar guiado por la prudencia y ser consciente de que su determinación podría implicar que se prive a una de las partes de su "día en corte", elemento esencial del debido proceso de ley. *León Torres v. Rivera Lebrón, supra,* pág. 44.

Cónsono con lo anterior, nuestro más Alto Foro ha resuelto que, existen litigios y controversias que "por su naturaleza no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que en tales casos un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas". *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001), citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 311 (1994); *García López v. Méndez García*, 88 DPR 363, 379 (1963). Dicho foro ha identificado como posibles controversias de este tipo aquellas que incluyen "elementos subjetivos, es decir, aquellas en las que el factor credibilidad juegue un papel esencial o decisivo para llegar a la verdad, y donde un litigante dependa 'en gran parte de lo que extraiga del contrario en el curso de un juicio vivo'". *Id.*, citando a *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

En lo pertinente, la Regla 36 de Procedimiento Civil, *supra*, impone unos requisitos de forma con los cuales hay que cumplir al momento de promover una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones

juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Si la parte promovente incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas, supra*, pág. 111.

Asimismo, la parte que se opone a una sentencia sumaria tiene que cumplir con los requisitos de la precitada Regla 36, *supra*. *Oriental Bank v. Caballero García, supra*, pág. 680. En otras palabras, la parte que desafía dicha solicitud no podrá descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón, supra*, pág. 43. Así pues, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe "puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra". *Id.*, pág. 44. Entiéndase que, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *Id*. De lo contrario, corre el riesgo de que se dicte sentencia en su contra. *Oriental Bank v. Caballero García, supra*.

Al evaluar una moción de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición del Tribunal de Primera Instancia. *Serrano Picón v. Multinational Life Ins., supra*, pág. 993; *Meléndez González et al. v. M. Cuebas, supra*, págs. 115, 118. Tómese en cuenta que, nuestra revisión es una *de novo* y debemos basar nuestro análisis por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. A tenor, nuestro más Alto Foro ha esbozado los criterios que deben guiar esta revisión. *Roldán Flores v. M. Cuebas et al.*, 199

DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119. Así pues, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos y;

4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al., supra*, pág. 679.

Ahora bien, estamos limitados en cuanto a: (1) que no podemos tomar en consideración evidencia que las partes no presentaron ante el foro primario, y (2) tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al tribunal de instancia luego de celebrado un juicio en su fondo. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Al realizar nuestra revisión *de novo* debemos "examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Id.*

### C. Personalidad jurídica de las corporaciones

La Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, conocida como la Ley General de Corporaciones, 14 LPRA sec. 3501 *et seq.* (en adelante, "Ley Núm. 164-2009"), reconoce a las corporaciones amplias facultades para llevar a cabo sus negocios y operaciones, entre ellas, demandar y ser demandadas, comprar, vender, arrendar, adquirir o ceder bienes muebles o inmuebles, llevar a cabo sus negocios y operaciones, otorgar contratos e incurrir en responsabilidades. Art. 2.02 de la Ley Núm. 164-2009,

14 LPRA sec. 3522. Las corporaciones debidamente constituidas poseen una personalidad jurídica propia y separada de la de sus accionistas, directores, oficiales o miembros, y, como tal, su patrimonio es distinto y separado de los patrimonios de sus accionistas. *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011); *Sucn. Santaella v. Srio. de Hacienda*, 96 DPR 442, 451 (1968).

Nuestro Tribunal Supremo ha reiterado que la existencia jurídica de la corporación es independiente de la de sus accionistas, directores y oficiales. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015). Aunque las corporaciones necesariamente actúan por conducto de personas naturales, ello no altera la separación jurídica existente entre la entidad corporativa y quienes la administran o representan. *Id.*, pág. 50. A esos efectos, el Tribunal Supremo expresó lo siguiente:

> "El hecho de que la corporación como ente jurídico solo puede actuar a través de personas naturales, meramente explica una realidad. Lo que tiene importancia y consecuencia jurídica[,] sin embargo, es que esa actuación de sus directores en beneficio del patrimonio corporativo es un esfuerzo corporativo y no uno personal. Pretender lo contrario equivaldría a descorrer el velo corporativo. Esto [descorrer el velo corporativo] solamente se justifica cuando la personalidad corporativa se utilice para 'derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen.'" *Sucn. Santaella v. Srio. de Hacienda, supra.* (Citas omitidas).

Como corolario de lo anterior, nuestro ordenamiento reconoce el principio de responsabilidad limitada de los accionistas. Conforme a este principio, la responsabilidad por las deudas y obligaciones de la corporación se limita, en términos generales, al capital aportado por los accionistas a la entidad corporativa. *DACo v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905, 924-925 (1993); *Fleming v. Toa Alta Develop. Corp.,* 96 DPR 240, 243 (1968). Asimismo, el Tribunal Supremo ha advertido que "reconocer una causa de acción directamente sobre los agentes por los actos de una corporación desgarraría la personalidad jurídica separada que inviste la Ley General de Corporaciones de 2009 a los entes corporativos y añadiría mayores

obstáculos al desarrollo económico de Puerto Rico." *Santiago Nieves v. Braulio Agosto Motors*, 197 DPR 369, 384 (2017). (Citas omitidas).

### D. Responsabilidad civil extracontractual

La responsabilidad civil extracontractual en Puerto Rico surge al amparo del Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801, el cual dispone que toda persona que por culpa o negligencia cause daño a otra viene obligada a repararlo. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1125 (2024); *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 767-768 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 483 (2022).

Para que prospere una reclamación de daños y perjuicios bajo dicho precepto, la parte demandante debe demostrar: (1) la existencia de un acto u omisión culposa o negligente; (2) un daño real; y (3) una relación causal entre la conducta imputada y el daño reclamado. *Inmob. Baleares et al. v. Benabe et al.*, *supra*; *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

La culpa o negligencia consiste en la falta del debido cuidado, el no anticipar y prever las consecuencias racionales de un acto u omisión, que una persona prudente y razonable habría evitado en las mismas circunstancias. *Sucn. Mena Pamias et al. v. Meléndez et al., supra*, pág. 768; *Pérez et al. v. Lares Medical et al.,* 207 DPR 965, 976-977 (2021). La culpa abarca cualquier actuación humana que suponga una infracción al orden jurídico o moral, por lo que la conducta que da lugar a responsabilidad civil debe ser ilícita y contraria a la ley, al orden público o a las buenas costumbres. *Nieves Díaz v. González Massas, supra*, págs. 843-844.

De otra parte, el daño consiste en el menoscabo material o moral sufrido por una persona en su persona, propiedad o patrimonio, en contravención a una norma jurídica y por el cual otra persona debe responder. *Nieves Díaz v. González Massas, supra*, pág. 845. Nuestro

ordenamiento reconoce tanto daños patrimoniales o económicos como daños morales. *Id.*

Ahora bien, entre el acto culposo o negligente y el daño sufrido debe existir un nexo causal adecuado. Esto se conoce en nuestro ordenamiento como la doctrina de la causalidad adecuada, la cual establece que "no es causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general". *Sucn. Mena Pamias et al. v. Meléndez et al., supra*; *Pérez et al. v. Lares Medical et al., supra*, pág. 977. De manera que, para surgir el elemento del nexo causal, debe de existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al autor demandado.

La relación causal constituye el elemento del acto ilícito que vincula directamente el daño con la conducta antijurídica imputada. *Nieves Díaz v. González Massas, supra*, págs. 844-845; *Rivera v. SLG Díaz*, 165 DPR 408, 422 (2005). Conforme a esta doctrina, no basta demostrar que un hecho fue condición para la ocurrencia del daño, sino que es necesario que el perjuicio reclamado aparezca como una consecuencia razonable y previsible de la acción u omisión de que se trate. *Cruz Flores et al. v. Hosp. Ryder et al., supra*, pág. 485; *Hernández Vélez v. Televicentro*, 168 DPR 803, 814 (2006).

### E. Interferencia contractual torticera

La doctrina de interferencia torticera con relaciones contractuales reconoce una causa de acción cuando un tercero ajeno a una relación contractual interviene ilícitamente en ella en perjuicio de una de las partes contratantes. *Jusino et als. v. Walgreens*, 155 DPR 560, 575 (2001). Esta reclamación surge al amparo de los principios generales de responsabilidad civil extracontractual recogidos en el Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10802, y puede dar lugar a responsabilidad solidaria entre el tercero interviniente y el contratante que incumple la

obligación asumida. *Id.*; *Dolphin Int'l of PR v. Ryder Truck Lines*, 127 DPR 869, 879 (1991); *Gen. Office Prods. v. A. M. Capen's Sons*, 115 DPR 553, 558 (1984).

Para que prospere una causa de acción por interferencia contractual torticera, deben concurrir los siguientes elementos: (1) existencia de un contrato con el cual interfiera un tercero; (2) culpa del tercero, bastando que se presenten hechos que permitan inferir que actuó intencionalmente y con conocimiento de la existencia del contrato; (3) la existencia de un daño; y (4) que dicho daño sea consecuencia de la actuación culposa del tercero. *Jusino et als. v. Walgreens, supra*, págs. 575-576. Sobre este último requisito, el Tribunal Supremo ha expresado que: "[e]l nexo causal necesario es entre el acto del tercero y su efecto sobre el perjudicado. Es impertinente a estos efectos que el cocontratante del perjudicado haya tenido la intención de incumplir el contrato. Basta con que el tercero haya provocado o contribuido a la inejecución." *Gen. Office Prods. v. A. M. Capen's Sons, supra*, pág. 559.

Ahora bien, la existencia de un contrato válido constituye un requisito indispensable para la procedencia de esta causa de acción. Por ello, cuando lo afectado es únicamente una expectativa o una relación económica ventajosa sin que medie un vínculo contractual, la acción por interferencia torticera no procede, aunque es posible que se incurra en responsabilidad bajo otros supuestos jurídicos". *Dolphin Int'l of PR v. Ryder Truck Lines, supra*; *Gen. Office Prods. v. A. M. Capen's Sons, supra*.

### F. Contrato de arrendamiento y opción de compra

El contrato de arrendamiento es aquel mediante el cual una parte se obliga a ceder temporalmente a otra el uso y disfrute de un bien a cambio de un precio cierto. Art. 1331 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10101. Su duración puede ser determinada o indeterminada. Arts. 1332 y 1333 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 10102 y 10103.

Mediante este contrato, el arrendador transmite temporalmente al arrendatario el goce y uso de un bien de su propiedad a cambio del pago de

un canon. *Garage Coop. v. Arco Caribbean, Inc.*, 111 DPR 52, 54 (1981). Asimismo, un contrato de arrendamiento debidamente inscrito en el Registro de la Propiedad constituye un derecho real oponible frente a terceros. *Id.*

Por otro lado, el Artículo 1335 del Código Civil de Puerto Rico de 2020 regula la continuación del arrendamiento concluido o tácita reconducción. Conforme a dicho precepto, una vez vencido el término pactado, el arrendamiento puede continuar en los mismos términos contratados hasta que alguna de las partes manifieste su intención de darlo por terminado. Art. 1335 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10105.

Nuestro Tribunal Supremo ha resuelto que la tácita reconducción no constituye una prórroga del contrato original, sino el nacimiento de un contrato nuevo que surge de la voluntad presunta de las partes. *Vicar Builders v. ELA et al.*, 192 DPR 256, 261 (2015). Para que opere esta figura, "[d]ebe ser claro el ánimo de reconducir del arrendatario, el cual queda demostrado al quedarse disfrutando de la cosa arrendada luego de que vence el contrato. De igual forma, se entiende que el arrendador consintió tácitamente a la reconducción si no hace requerimiento o manifestación alguna para que el arrendatario cese en el disfrute de la cosa." *Id.,* pág. 262.

De otra parte, el Artículo 1029 del Código Civil de 2020, 31 LPRA sec. 8821, define la opción de compra como el derecho que faculta a su titular a decidir, dentro de un plazo determinado, si perfecciona un contrato de compraventa previamente acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado.

Jurisprudencialmente, el contrato de opción ha sido definido como un "convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *PDCM Assoc. v. Najul Bez,*

174 DPR 716, 724 (2008), citando a *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 246 (2002).

Del contrato de opción nace el derecho del optante de decidir, dentro del término pactado, si perfecciona el negocio jurídico objeto de la opción. *PDCM Assoc. v. Najul Bez, supra.* A su vez, el concedente tiene la obligación de no realizar actos que frustren el ejercicio oportuno de ese derecho. *Mayagüez Hilton Corp. v. Betancourt, supra,* pág. 250.

El, el Artículo 1030 del Código Civil de 2020, 31 LPRA sec. 8822, establece que título de constitución, además de las estipulaciones y del domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente, debe contener, como mínimo, los siguientes requisitos:

> (a) el plazo de duración del derecho y, si procede, el plazo para su ejercicio;
>
> (b) en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real;
>
> (c) el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y
>
> (d) la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido.

Finalmente, el Código Civil dispone que la opción de compra puede ser inscrita en el Registro de la Propiedad cuando cumple con los requisitos establecidos por ley y consta en escritura pública. *Id.* Asimismo, la opción de compra contenida en un contrato de arrendamiento es inscribible, única y exclusivamente, por la duración del arrendamiento sin incluir la prórroga. Art. 1031 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 8823.

### G. Fe pública registral y el tercero registral

Nuestro ordenamiento registral reconoce una presunción *iuris tantum* de corrección respecto de los derechos publicados en el Registro de la

Propiedad. En particular, el Artículo 34 de la Ley Núm. 210 de 8 de diciembre de 2015, conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, según enmendada (en adelante, *Ley Hipotecaria*), dispone que "[a] todos los efectos legales se presumirá que los derechos publicados en el asiento de inscripción de cada finca existen y pertenecen a su titular en la forma determinada por el asiento respectivo." 30 LPRA sec. 6049.

A tenor con lo anterior, se considera tercero registral a quien adquiere un derecho real confiando en las constancias del Registro de la Propiedad. *Banco de Santander v. Rosario Cirino*, 126 DPR 591, 601 (1990). La protección que brinda la fe pública registral persigue salvaguardar a quienes adquieren derechos confiando razonablemente en la realidad que refleja el Registro, aun cuando posteriormente surjan discrepancias entre esta y la realidad jurídica extrarregistral. *Id.*, pág. 602.

El principio de la tercería registral se encuentra recogido en el Artículo 35 de la *Ley Hipotecaria*, 30 LPRA sec. 6050. Conforme a dicho precepto, el derecho real de un tercero quedará protegido por la fe pública registral cuando haya sido adquirido válidamente, de buena fe, a título oneroso y de persona que aparezca en el Registro con facultad para transmitirlo, siempre que la adquisición haya sido inscrita y que la inexactitud registral no surja clara y expresamente del propio Registro. 30 LPRA sec. 6050.

Nuestra jurisprudencia ha resumido estos requisitos señalando que el tercero protegido debe ser un adquirente de buena fe y a título oneroso que, en virtud de un negocio jurídico válido, adquiera e inscriba un derecho real inmobiliario de quien aparezca registralmente facultado para transmitirlo, sin que consten expresamente las causas de la inexactitud registral. *Banco de Santander v. Rosario Cirino, supra*, págs. 603-604.

La buena fe constituye un requisito indispensable para la protección registral. Sobre este particular, se ha definido como el desconocimiento, al

momento de la adquisición, de la inexactitud registral o de los vicios que puedan afectar la titularidad del transferente. *Mundo v. Fúster*, 87 DPR 363, 376 (1963). El cumplimiento de dicho requisito deberá velarse en el momento en que "queda concluso el negocio jurídico de adquisición por el tercero." *Banco de Santander v. Rosario Cirino, supra*, pág. 607.

Como ha señalado la doctrina, la buena o mala fe del transferente resulta irrelevante para estos efectos; lo determinante es la buena fe del tercero adquirente al momento de perfeccionarse la adquisición. *Id.* El Artículo 35 de la Ley Hipotecaria presume la buena fe del adquirente, por lo que corresponde a quien la impugna demostrar la existencia de mala fe. 30 LPRA sec. 6050; *Banco de Santander v. Rosario Cirino, supra*, pág. 606.

Asimismo, la jurisprudencia ha reconocido que la buena fe registral exige un grado mínimo de diligencia por parte del adquirente. *Id.*, págs. 606-607; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 558 (1991). Sin embargo, no se le puede exigir a quien confía en las constancias registrales conocimientos técnico-jurídicos que le permitan cuestionar la corrección de la actuación del Registrador. *Consejo Tit. C. Parkside v. MGIC Fin. Corp., supra.* El objetivo de emplear un grado de diligencia razonable a quien reclama la protección de sus derechos es que este pueda detectar cualquier defecto en el título de quien le transmite el derecho, es decir, para descubrir cualquier inexactitud en las constancias del Registro, que puedan afectar su titularidad. Es decir, el tercero no puede haber tenido medios racionales o motivos suficientes para conocer el defecto que produce la nulidad o la revocación del título de su transferente. *Infante v. Maeso*, 165 DPR 474, 486 (2005) (Sentencia).

Por otro lado, la Ley Hipotecaria define la inexactitud registral como "todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extraregistral". Art. 211 de la Ley Hipotecaria, 30 LPRA sec. 6351.

Finalmente, el Tribunal Supremo ha reiterado que la protección de la fe pública registral puede amparar al tercero adquirente aun cuando posteriormente se invalide el título de su transferente, siempre que las causas de nulidad no surjan expresamente del Registro y el tercero haya adquirido de buena fe. *Delgado Rodríguez v. Rivera Siverio*, 173 DPR 150, 169 (2008).

**III**

Por estar estrechamente relacionados entre sí, mediante *Resolución* emitida el 11 de mayo de 2026 consolidamos los recursos de epígrafe. No obstante, aunque ambos recursos solicitan la revisión de la *Resolución* emitida por el TPI el 19 de marzo de 2026, los errores planteados por los peticionarios descansan sobre fundamentos jurídicos distintos. Por ello, los atenderemos separadamente luego de identificar los hechos materiales incontrovertidos pertinentes a las controversias planteadas.

**A. Hechos materiales incontrovertidos**

Luego de examinar de *novo* el expediente y la prueba sometida por las partes en apoyo y en oposición a las respectivas solicitudes de sentencia sumaria, concluimos que los siguientes hechos materiales no se encuentran en controversia:

1. El 30 de mayo de 2017 la señora Leslie Collazo Rivera suscribió un contrato de arrendamiento con María M. Cintrón Valle y David M. Nieves Cintrón respecto al inmueble objeto del presente litigio.

2. El contrato estableció un término de duración desde el 10 de julio de 2017 hasta el 10 de julio de 2022.

3. El contrato incluyó una cláusula mediante la cual los arrendadores otorgaron a la arrendataria un derecho de primera opción a compra durante la vigencia del arrendamiento.

4. El contrato de arrendamiento nunca fue inscrito en el Registro de la Propiedad.

5. Del estudio de título efectuado el 27 de abril de 2023 no surgía inscrito derecho alguno a favor de la recurrida relacionado con el contrato de arrendamiento o con el alegado derecho de primera opción de compra.

6. El 28 de marzo de 2023 se otorgó un Contrato de Opción de Compraventa entre María Cintrón Valle y VOA, CSP.

7. El 24 de mayo de 2023 se otorgó la Escritura Núm. 1 sobre Compraventa ante el notario Oscar González Badillo, mediante la cual VOA, CSP adquirió el inmueble objeto del litigio.

8. En dicha escritura compareció el señor Víctor J. Olivo Afanador en representación de VOA, CSP, en su carácter de presidente de dicha entidad, autorizado a comparecer mediante Certificación de Resolución Corporativa jurada y suscrita el 24 de mayo de 2023.

9. El inmueble fue adquirido por VOA, CSP y no por el señor Víctor J. Olivo Afanador en su carácter personal.

10. El 2 de junio de 2023 la escritura de compraventa fue presentada e inscrita en el Registro de la Propiedad.

11. Luego de la compraventa, la recurrida permaneció ocupando el inmueble.

12. VOA, CSP presentó una acción de desahucio en precario contra la recurrida en el caso BY2023CV03145.

13. En dicho procedimiento se dictó Sentencia ordenando el desalojo y la entrega del inmueble a favor de VOA, CSP.

14. La señora Verónica Morán no fue parte del contrato de arrendamiento suscrito en 2017.

15. La señora Verónica Morán tampoco fue parte de la escritura de compraventa mediante la cual VOA, CSP adquirió el inmueble.

16. El señor Víctor J. Olivo Afanador y la señora Verónica Morán están casados bajo el régimen de sociedad legal de gananciales.

## B. Recurso TA2026CE00568

En este recurso, la SLG Olivo-Morán sostiene que el foro primario erró al denegar su solicitud de sentencia sumaria. En esencia, argumentan que la prueba presentada por la recurrida resulta insuficiente para sostener reclamaciones personales contra ellos. Les asiste la razón.

Como discutimos anteriormente, las corporaciones poseen una personalidad jurídica independiente y separada de la de sus accionistas, directores y oficiales. Asimismo, los actos realizados por estos últimos en representación de la corporación constituyen, como norma general, actuaciones corporativas y no personales. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, supra, págs. 49-50; *Sucn. Santaella v. Srio. de Hacienda, supra.*

En el presente caso, los hechos incontrovertidos demuestran que quien adquirió el inmueble fue VOA, CSP y que el señor Olivo compareció en la transacción como presidente y representante autorizado de dicha entidad. Igualmente, las controversias que dieron paso a este litigio surgieron en el contexto de la adquisición del inmueble por VOA, CSP y de los esfuerzos posteriores encaminados a obtener su posesión y disfrute.

Ahora bien, para imponer responsabilidad civil extracontractual es indispensable demostrar la existencia de una conducta culposa o antijurídica, un daño y un nexo causal adecuado entre ambos. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 485; *Nieves Díaz v. González Massas*, *supra*, págs. 844-845.

Examinada la prueba presentada en oposición a la solicitud de sentencia sumaria, concluimos que la recurrida no identificó evidencia específica capaz de generar una controversia real y sustancial respecto a la existencia de una conducta personal del señor Olivo que, independientemente de su función representativa dentro de VOA, CSP, pudiera dar base a una reclamación individual bajo el Artículo 1536 del Código Civil. Las alegaciones relacionadas con comunicaciones, requerimientos y gestiones dirigidas a reclamar la posesión del inmueble o a regular la ocupación de la propiedad (ajustando el canon de arrendamiento), describen actuaciones vinculadas al ejercicio de derechos que VOA, CSP entendía haber adquirido como titular del inmueble.

De igual forma, las alegaciones dirigidas contra la señora Morán no establecen conducta culposa propia ni se acompañaron de evidencia que permitiera demostrar la concurrencia de los elementos necesarios para imponer responsabilidad civil extracontractual. Más allá de alegaciones generales sobre que fue esta quien le dijo a la recurrida que pasara por la oficina de VOA, CSP y que allá fue donde se le comunicó de la venta, no hay ninguna otra alegación relacionada con la señora Morán que justifique

mantenerla en el pleito, más aún cuando el expediente carece de prueba capaz de sostener una reclamación independiente en su contra.

Finalmente, tampoco hemos encontrado fundamento jurídico para mantener las reclamaciones contra la Sociedad Legal de Gananciales. Ante la ausencia de una causa de acción viable contra cualquiera de los cónyuges en su carácter personal, tampoco existe base para imponer responsabilidad a la sociedad legal de gananciales derivada de tales reclamaciones.

Por consiguiente, concluimos que el foro primario erró al determinar que existían controversias materiales de hecho que impedían la adjudicación sumaria de las reclamaciones dirigidas contra el señor Olivo, la señora Morán y la Sociedad Legal de Gananciales compuesta por ambos.

### C. Recurso TA2026CE00564

Por su parte, en su recurso VOA, CSP sostiene que el TPI erró al denegar su solicitud de sentencia sumaria parcial, pues la prueba presentada demuestra que adquirió el inmueble como tercero registral protegido por la fe pública registral y que la recurrida no produjo evidencia suficiente para sostener las restantes causas de acción formuladas en su contra. Coincidimos.

Los hechos incontrovertidos reflejan que ni el contrato de arrendamiento ni el alegado derecho de primera opción de compra invocados por la recurrida fueron inscritos en el Registro de la Propiedad. Del mismo modo, surge incontrovertido que VOA, CSP adquirió el inmueble mediante escritura pública otorgada por quien aparecía registralmente facultado para transmitir el dominio y que posteriormente presentó su título para inscripción.

Como vimos, el Artículo 35 de la Ley Hipotecaria, *supra*, protege al tercero que adquiere válidamente, de buena fe y a título oneroso de quien aparece registralmente facultado para transmitir el derecho. Asimismo, la

buena fe se presume y corresponde a quien la impugna derrotar dicha presunción mediante prueba suficiente.

Examinado el expediente, concluimos que la recurrida no presentó evidencia concreta capaz de establecer una controversia material respecto a la buena fe de VOA, CSP o respecto a la existencia de circunstancias que impidieran la aplicación de la protección registral contemplada en la Ley Hipotecaria. La mera alegación de conocimiento de controversias extrarregistrales o de la ocupación del inmueble por parte de la recurrida resulta insuficiente para derrotar, por sí sola, la protección que el ordenamiento jurídico reconoce al tercero registral.

Tampoco advertimos controversia material respecto a la reclamación por interferencia contractual torticera. Como discutimos, esta causa de acción exige prueba de una intervención intencional y culposa de un tercero sobre una relación contractual. Sin embargo, la recurrida no identificó evidencia específica que permitiera concluir que VOA, CSP incurrió en conducta ilícita dirigida a provocar el incumplimiento de una obligación contractual vigente. La adquisición del inmueble mediante una compraventa formalizada por escritura pública no constituye, sin más, prueba de interferencia contractual torticera.

Por último, tampoco procede mantener las reclamaciones de daños y perjuicios formuladas contra VOA, CSP. La prueba presentada demuestra únicamente que la corporación adquirió el inmueble y posteriormente ejerció los mecanismos legales disponibles para reclamar su posesión. Tales actuaciones, por sí solas, no constituyen conducta culposa o antijurídica susceptible de generar responsabilidad extracontractual.

En consecuencia, concluimos que el foro erró al determinar que subsistían controversias reales y sustanciales de hechos materiales que impedían la adjudicación sumaria de las reclamaciones formuladas contra VOA, CSP.

**IV**

Por los fundamentos antes expuestos, procede expedir los autos solicitados y revocar la *Resolución* recurrida. En consecuencia, se dicta sentencia sumaria a favor de VOA, CSP, el señor Olivo, la señora Morán y la Sociedad Legal de Gananciales compuesta por ambos y se desestiman con perjuicio las reclamaciones presentadas contra dichos demandados.  Se ordena la continuación de los procedimientos contra los demás codemandos.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones